

KTF:BG
F. #2025R00393

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 2, 2025

By ECF and E-mail

The Honorable Lara K. Eshkenazi
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> Re:  United States v. David Ortiz
> Criminal Docket No. 25-MJ-231

Dear Judge Eshkenazi:

The government respectfully submits this letter in support of its request that the Court enter an order of detention against the defendant David Ortiz, who will appear before Your Honor on September 2, 2025 at 2pm to be arraigned on the complaint. The defendant was arrested on the complaint in the Northern District of New York on August 11, 2025 and appeared before a judge there for an initial appearance. He was transported to the Eastern District of New York late last week. For the reasons set forth below, the defendant should be detained because he is a danger to the community and a risk of flight, and no combination of conditions can mitigate these risks.

I.      Background

On August 11, 2025, the defendant was arrested on the complaint charging him with a violation of 18 U.S.C. § 2113(a) (bank robbery).

The charge in the complaint is based on the defendant's brazen gunpoint robbery of two Brinks employees on the morning of June 2, 2025, as they were transporting money belonging to a Bank of America branch ("the Bank"), from the Brinks armored truck to the Bank.

Specifically, at about 8:08 a.m., a dark-colored Chevrolet sport utility vehicle without front or rear license plates (the "Chevy") parked alongside the Bank located at 205-02 Linden Boulevard, Queens, New York. At approximately 8:43 a.m., two employees from Brinks arrived at the location in an armored truck. As the Brinks employees were walking towards the entrance of the Bank with the money bag in a hand truck, two masked men wearing dark-colored clothing, one of whom is the defendant, exited the Chevy holding what appeared to be firearms.

The defendant pointed his firearm at the Brinks employees and stated, in sum and substance, "Get down, get down, get down.  We are not here to kill anyone.  We just want the money."  The defendant stole the service weapon from one the Brinks employees.  The other individual the removed the money bag from the hand truck and placed it into the Chevy. The defendant and other individual then entered the Chevy and fled the scene, making a left on Linden Boulevard. In total, the defendant and the other individual stole approximately $542,000.

As seen on video surveillance footage, at approximately 8:53 a.m., the Chevy parked near the intersection of Hilburn Avenue and Dunkirk Street in Queens, New York. The defendant and the other individual then affixed a Texas license plate to the Chevy with license plate number SRR5518, which is registered to the defendant and another person.  At approximately 9:11 a.m., the defendant the other individual walked away with the stolen money and made a left on Dunkirk Street. At approximately 2:30 p.m., the defendant returned to the vicinity of the Chevy, entered the Chevy, and drove away

Evidence of the offense includes, among other things, video surveillance of the robbery and video surveillance of the defendant and the other individual after the robbery, as well as the defendant's post-arrest statements admitting to the robbery.

II.      Legal Standard

Under the Bail Reform Act, 18 U.S.C. § 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight.  18 U.S.C. § 3142(e).  A finding of dangerousness must be supported by clear and convincing evidence, United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995), and risk of flight must be proven by a preponderance of the evidence, United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987).

The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "the danger that the defendant might engage in criminal activity to the detriment of the community." United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (internal quotation marks omitted).

Whether detention is sought on the basis of flight or dangerousness, the Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged, including whether the offense involves a controlled substance or a firearm; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the seriousness of the danger posed by the defendant's release.  See 18 U.S.C. § 3142(g).

The possibility of a severe sentence is an important factor in assessing a defendant's likelihood of flight.  See United States v. Khusanov, 731 F. App'x 19, 21 (2d Cir. 2018) ("[A] district court does not clearly err in concluding that a defendant facing a potentially lengthy prison sentence possesses a strong motive to flee."); United States v. Martir, 782 F.2d 1141, 1147 (2d Cir. 1986) (explaining that the lengthy maximum combined term of imprisonment faced by the defendant "created potent incentives to flee"); United States v. Dodge, 846 F. Supp. 181, 184–85 (D. Conn. 1994) (explaining that the possibility of a "severe

sentence" heightens the risk of flight); <u>accord</u> <u>United States v. Cisneros</u>, 328 F.3d 610, 618 (l0th Cir. 2003) (finding that the defendant was a flight risk because her knowledge of the seriousness of the charges against her gave her a strong incentive to abscond); <u>United States v. Townsend</u>, 897 F.2d 989, 995 (9th Cir. 1990) ("Facing the much graver penalties possible under the present indictment, the defendants have an even greater incentive to consider flight.").

Evidentiary rules do not apply at detention hearings, and the government is entitled to present evidence by way of proffer, among other means. <u>See</u> 18 U.S.C. § 3142(f)(2); <u>see also</u> <u>United States v. LaFontaine</u>, 210 F.3d 125, 130–31 (2d Cir. 2000). In the pre-trial context, few detention hearings involve live testimony or cross-examination; rather, most proceed on proffer. <u>LaFontaine</u>, 210 F.3d at 131. This is because bail hearings are "typically informal affairs, not substitutes for trial or discovery." <u>Id.</u> (internal quotation marks omitted); <u>see also</u> <u>United States v. Mercedes</u>, 254 F.3d 433, 437 (2d Cir. 2001) ("[The defendant] has twice been convicted of weapon possession—one felony conviction, and one misdemeanor conviction. We find the district court committed clear error in failing to credit the government's proffer with respect to [the defendant's] dangerousness.").

Where a judicial officer concludes after a hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1).

III.     <u>Argument</u>

As a threshold matter, because this case involves a violation of 18 U.S.C. § 2113(a), which is a "crime of violence," the defendant is eligible for detention. <u>See</u> 18 U.S.C. § 3142(f)(1)(A).[1] Every § 3142(g) factor counsels heavily in favor of the defendant's detention. As outlined below, the defendant poses a danger to the community based on his use of an apparent firearm in furtherance of that robbery. Moreover, his criminal history, the evidence of his criminal conduct, and the high penalties he faces if convicted all demonstrate by a preponderance of the evidence that the defendant poses a flight risk.

A.     <u>The Defendant's Danger to the Community</u>

The offense conduct is extremely serious and dangerous. Indeed, the offense is "a crime of violence" and one that "involves . . . a . . . firearm," which are explicitly listed in the Bail Reform Act as factors to be considered in evaluating the need for pretrial detention. <u>See</u> 18 U.S.C. § 3142(g)(1). The crime charged in this case is extremely serious, as the defendant brandished an apparent firearm to the Brinks employees. The crime itself also appears to have involved premeditation. Video surveillance shows the defendant and the individual arriving at the scene of the thirty-five minutes before the bank robbery. The nature and circumstances of

---

[1] The Second Circuit has held that bank robbery, in violation of 18 U.S.C. § 2113(a), is a "crime of violence" for the purposes of 18 U.S.C. § 924(c), which defines "crime of violence" in the same way as the Bail Reform Act. <u>See</u> <u>United States v. Hendricks</u>, 921 F.3d 320, 328 (2d Cir. 2019) (a "bank robbery committed 'by intimidation' categorically constitutes a crime of violence for the purposes of § 924(c)(1)(A)").

the offense thus weigh heavily in favor of detention.

      B.      <u>The Defendant's Risk of Flight</u>

               1.      <u>The Defendant's History and Characteristics</u>

The defendant has a fairly extensive criminal history. In 1993, he pled guilty to Attempted Murder. He was sentenced to a term of four to twelve concurrent years. He was incarcerated beginning on October 7, 1993 and released on January 28, 2005. In 2003, while incarcerated, he was convicted of Attempted Knowingly Make/Possess Dangerous Contraband In Prison, and he was sentenced to eighteen months to three years concurrent time. In 2006, he pled guilty to Criminal Possession of a Weapon-3rd and Attempted Criminal Possession of a Controlled Substance-3rd. He was sentenced to 42 months and released on April 2, 2010. Finally, on August 29, 2012, he pled guilty to Attempted Criminal Possession Weapon -2 and was sentenced to 7 years, with 5 years post-release supervision. He was released on December 4, 2017.

               2.      <u>Potential Punishment</u>

As a result of his criminal history and the nature of the offense charged in the complaint, the defendant faces significant penalties prescribed by law, giving him substantial incentive to flee. "When faced with the possibility of a significant prison term, defendants have a strong incentive to flee." <u>United States v. Edwards</u>, 2021 WL 796089, at *2 (E.D.N.Y. Mar. 2, 2021); <u>see, e.g.</u>, <u>United States v. Scali</u>, 738 F. App'x 32, 33 (2d Cir. 2018) ("The court reasonably determined that [the defendant]'s Guidelines range of 87-108 months' imprisonment was significant enough to provide an incentive to flee."); <u>see also</u> <u>United States v. Khusanov</u>, 731 F. App'x 19, 21 (2d Cir. 2018) ("[A] district court does not clearly err in concluding that a defendant facing a potentially lengthy prison sentence possesses a strong motive to flee.").

Here, if convicted of just the one count currently charged in the complaint, the government preliminarily estimates that the defendant's sentencing guidelines range would be 87 to 108 months of imprisonment.

               3.      <u>Weight of the Evidence</u>

As noted above, there is substantial evidence of the defendant's commission of the charged offense. Video surveillance captured the defendant and another individual committing the robbery. There is also video surveillance capturing the defendant, after the robbery, affixing a Texas license plate to the Chevy. Texas registration records reveal that the Chevy is registered to the defendant and another individual.

Where, as here, the evidence of guilt is strong, it provides "a considerable incentive to flee." <u>United States v. Millan</u>, 4 F.3d 1038, 1046 (2d Cir. 1993); <u>accord</u> <u>United States v. Palmer-Contreras</u>, 835 F.2d 15, 18 (1st Cir. 1987) (<u>per</u> <u>curiam</u>) (explaining that where "the evidence against defendants is strong, the incentive for relocation is increased").

4

IV.    Conclusion

        For the foregoing reasons, the United States respectfully requests that the Court issue an order of detention against the defendant.

        Respectfully submitted,

        JOSEPH NOCELLA, JR.
        United States Attorney

By:     /s/         
        Brachah Goykadosh
        Special Assistant U.S. Attorney
        (718) 254-6237